UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL JOSHUA HENDERSON,

                            Plaintiff,                      Case # 18-CV-6091-FPG

v.                                                              DECISION AND ORDER

BRIAN HEMBROOK, et al.,

                            Defendants.

## INTRODUCTION

*Pro se* Plaintiff Michael Joshua Henderson filed this case pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while he was an inmate at Attica Correctional Facility. Henderson's Complaint contained over 400 pages and alleged 25 claims against 59 defendants. ECF Nos. 1-2.

After granting Henderson's an *in forma pauperis* motion, the Court screened his Complaint under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), found that it did not comply with the requirements of Federal Rule of Civil Procedure 8, and directed him to file an amended complaint. ECF No. 7.

After receiving extensions of time for over one year, Henderson eventually filed an Amended Complaint that contained over 53 pages and alleged 27 claims against 44 defendants. ECF No. 26. The Court screened the Amended Complaint, found that three retaliation claims were sufficient to proceed against two Defendants, and dismissed the remaining claims with prejudice. ECF No. 28.

On July 22, 2019, Henderson moved for reconsideration of the Court's order screening his Amended Complaint; specifically, he asks the Court to reconsider its dismissal of his twentieth

and twenty-first claims. ECF No. 29. For the reasons that follow, his motion is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

**I.  Facts**

In his twentieth claim, Henderson alleges that, on December 12, 2017 and January 18, 2018, Defendants retaliated against him when they compelled "Ms. J. Rivera, Offender Rehabilitation Coordinator" to falsify two misbehavior reports against him. ECF No. 26 at 34. Henderson was subjected to 90 days confinement in the Special Housing Unit ("SHU") for the first false misbehavior report and Tier III Hearing, "which was administratively reversed and expunged April 1, 2019." *Id.* Henderson was subjected to another 90 days of SHU confinement for the second misbehavior report and Tier III hearing, "which is still being challenged in the New York State Appellate Division." *Id.*

In screening this claim, the Court ultimately found that it was conclusory because there was no basis from which to conclude that that there was a retaliatory purpose behind the false misbehavior reports. ECF No. 28 at 17.

In his twenty-first claim, Henderson alleges that on January 18, 2018, Defendants retaliated against him by intercepting and confiscating his mail, including correspondence with his girlfriend, "DB." ECF No. 26 at 36. Henderson alleges that he and DB have known each other for years, she has been supporting him during his incarceration, he was going to ask her to marry him, and that they "share a close familial relationship." *Id.* at 36.

Henderson also alleges that, before January 18, 2018, Defendants Sullivan and McCulloch promulgated a rule at the Central New York Psychiatric Center ("CNYPC") that is unconstitutionally overbroad and vague and violates Henderson's rights to freedom of intimate

2

association. *Id.* DB works at CNYPC and is subject to this work rule, which states that CNYPC employees

> are not to have or maintain contact either by telephone calls, personal visits, correspondence of any nature with current or former inmates/forensic patients . . . . Any contact with former patients/residents/inmates/parolees must be reported immediately to the employee's supervisor. . . . The basic reasons for this policy are as follows: [CNYPC] is responsible for both the custody and treatment of convicted felons; it must maintain strict control over matters that affect the overall security of the facility. While many staff/former patient contacts are benign in nature, some such contacts could threaten the safety and security of staff and patients alike. It is, therefore, necessary to both restrict and monitor all contacts with former patients.

ECF No. 26 at 37.[1]

Henderson alleges that this rule has severed his relationship with DB forever, prevents them from communicating without being subject to discipline—Henderson "being placed in the SHU" and DB being fired—and has caused and will continue to cause irreparable harm if the Office of Mental Health is not enjoined from enforcing it. *Id.*[2]

Henderson alleges that Defendants Sullivan and McCulloch's work rule is overbroad, vague, and violates his right to freedom of intimate association in contravention of the First and Fourteenth Amendments. *Id.*

## II.  Legal Standard

A district judge may modify pre-trial rulings and interlocutory orders any time before final judgment. *See In re United States*, 733 F.2d 10, 13 (2d Cir. 1984). Reconsideration of a prior decision is generally justified if there is: (1) an intervening change in controlling law; (2) newly

---

[1] Henderson does not provide a citation to allow the Court to access this policy; thus, it is unclear whether this is an actual CNYPC policy and whether it is accurately reproduced, valid, or current. Nonetheless, for purposes of ruling on his motion, the Court will assume this is a current and valid policy.

[2] Henderson also alleges that he will be irreparably harmed if DOCCS is not enjoined from enforcing the "negative correspondence," but in his motion he states that he "did not sign any agreement not to correspond with DB, a negative correspondence was brought to him to sign and he refused." ECF No. 29 at 6.

3

available evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice. *See, e.g.*, *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). A litigant cannot use a motion for reconsideration to reargue matters already disposed of by prior rulings or to advance additional arguments that could have been raised previously. *See Duane v. Spaulding & Rogers Mfg. Inc.*, No. 92-CV-305, 1994 WL 494651, *1 (N.D.N.Y. Aug. 10, 1994). Thus, a "motion for reconsideration is not a device intended to give an unhappy litigant one additional chance to sway the judge." *Nossek v. Bd. of Ed. of Duanesburg Cent. Sch. Dist.*, No. 94-CV-219, 1994 WL 688298, *1 (N.D.N.Y. Nov. 10, 1994).

## III. Analysis

### A. Twentieth Claim

Henderson argues that the Court abused its discretion in dismissing his twentieth claim because "the Court overlooked . . . the facts within this claim that are *redacted*." ECF No. 20 at 3 (emphasis added). But the Court cannot "overlook" facts that it cannot read. Henderson explains that he redacted the facts to protect Rivera's "career and safety," which include allegations that Will, Diehl, and Licata said that they each forced Rivera to falsify misbehavior reports and stalking charges "because of [Henderson's] grievances." ECF No. 29 at 4.

In its screening order dismissing his original Complaint, however, the Court clearly warned Henderson that an amended complaint would completely replace his original Complaint and must include all of his allegations against each Defendant. ECF No. 7 at 7. Nonetheless, Henderson now attempts to have a third bite at the apple by alleging facts that he has known since he filed this case but failed to include in his Amended Complaint despite the Court's specific instructions. *See, e.g.*, *Albury v. J.P. Morgan Chase*, No. 03 CIV. 2007 (HBP), 2005 WL 1653939, at *3 (S.D.N.Y. July 14, 2005) (explaining that "[e]xcept where a movant is relying on new facts that

4

could not have been previously discovered . . . , additional facts or new legal theories cannot be asserted by way of a motion for reconsideration").

Henderson is not a novice litigant; he has filed at least seven lawsuits in state and federal court. Therefore, he was well aware of his pleading obligations and failed to satisfy them. The Court screened his claim, read it as presented, and properly determined that the allegations did not sufficiently state a retaliation claim. Nothing in Henderson's motion suggests that there has been an intervening change in controlling law, newly available evidence, or the need to correct a clear error of law or to prevent manifest injustice. As such, the Court denies his motion with respect to his twentieth claim.

### B. Twenty-First Claim

Henderson argues that the Court erred in dismissing his challenge to the CNYPC work rule because he claims he has "standing to challenge the work rule under the overbreadth doctrine." ECF No. 29 at 6.

The doctrine of Article III standing requires a litigant to demonstrate that (1) he has suffered actual or threatened injury as a result of the defendant's illegal conduct; (2) the injury is fairly traceable to the challenged action; and (3) the injury is redressable by a favorable decision. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982). The overbreadth doctrine functions as an exception to "the general prohibition on a litigant's raising another person's legal rights[.]" *Centerfolds, Inc. v. Town of Berlin*, 352 F. Supp. 2d 183, 189 (D. Conn. 2004). It relies on the idea that "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129 (1992).

To have overbreadth standing, a plaintiff need not demonstrate that he has Article III standing. Rather, he must show that he has "a claim of specific present objective harm or a threat of specific future harm," *Bigelow v. Virginia*, 421 U.S. 809, 816-817 (1975), and that he "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984); *see also Farrell v. Burke*, 449 F.3d 470, 499 (2d Cir. 2006). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Munson*, 467 U.S. at 958.

Henderson alleges a threat of specific future harm—that he will be placed in SHU if he communicates with DB in violation of the CNYPC rule. Moreover, the Court reasonably expects that Henderson will zealously frame the issues because, as he explains, he and DB have known each other for many years, DB has been a source of support throughout his incarceration, and he intended to ask DB to marry him before he was forced to stop communicating with her. ECF No. 26 at 36. His allegations, and the volume of *pro se* litigation he has undertaken, suggest that he will zealously pursue this claim.

The fact that DB could bring her own lawsuit does not bar Henderson's ability to make this overbreadth challenge. "Although such an argument might defeat a party's standing outside the First Amendment context, [the Supreme] Court has not found this argument dispositive in determining whether standing exists to challenge a statute that allegedly chills free speech." *Munson*, 467 U.S. at 957. Rather,

> where the claim is that a statute is overly broad in violation of the First Amendment, the [Supreme] Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims and with no requirement

6

that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.

*Id.* at 957-58 (quotation marks omitted). Thus, it does not matter that, as a prisoner, some of Henderson's communication privileges can be restricted without running afoul of constitutional protections.

Because the Court erred in not considering Henderson's standing to bring a facial overbreadth challenge under the First Amendment[3] to the CNYPC work rule, it reconsiders its prior order and reinstates Henderson's twenty-first claim, which will proceed to service upon Defendants Sullivan and McCulloch.

## CONCLUSION

Henderson's Motion for Reconsideration (ECF No. 29) is denied as to his twentieth claim and granted as to his twenty-first claim. Accordingly, the Clerk of Court will cause the United States Marshal to serve copies of the Summons, Amended Complaint, and this Order upon Defendants Sullivan and McCulloch without Henderson's payment, with unpaid fees to be recoverable if this action terminates by monetary award in Henderson's favor.

IT IS SO ORDERED.

Dated: October 22, 2019
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[3] Although Henderson also purports to bring an overbreadth challenge under the Fourteenth Amendment, the overbreadth doctrine applies only in the context of a First Amendment challenge. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth" doctrine outside the limited context of the First Amendment."); *Champagne v. Gintick*, 871 F. Supp. 1527, 1532 (D. Conn. 1994) ("[T]he overbreadth doctrine has never been recognized outside the context of the First Amendment.").