UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

MICHAEL JOSHUA HENDERSON,

                            Plaintiff,

                                                                      Case # 18-CV-6091-FPG

v.

                                                                       DECISION AND ORDER

BRIAN HEMBROOK, et al.,

                            Defendants.

## INTRODUCTION

*Pro se* Plaintiff Michael Joshua Henderson filed this case pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while he was an inmate at Attica Correctional Facility ("Attica"). ECF No. 1. Henderson's Complaint contained over 400 pages and alleged twenty-five claims against fifty-nine defendants. ECF Nos. 1–2. After granting his motion to proceed *in forma pauperis*, the Court screened Henderson's Complaint under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), found that it did not comply with the requirements of Federal Rule of Civil Procedure ("Rule") 8, and directed him to file an amended complaint. ECF No. 7.

Henderson's amended complaint filled fifty-three pages and alleged twenty-seven claims against forty-four defendants. ECF No. 26. The Court screened the amended complaint, found that three retaliation claims were sufficient to proceed against two Defendants, Brian Hembrook and John Schuck, and dismissed the remaining claims with prejudice. ECF No. 28. Henderson moved for reconsideration of the Court's order screening his amended complaint, seeking reconsideration of its dismissal of two causes of action against two Defendants, Ann Marie Sullivan and Deborah McCulloch. ECF No. 29. The Court permitted one previously screened claim to proceed to service:

1

that a rule at the Central New York Psychiatric Center ("CNYPC") is unconstitutionally overbroad and vague and violates Henderson's right to freedom of intimate association. ECF No. 31.

Now before the court is a motion to dismiss pursuant to Rule 12(b)(6), ECF No. 40, filed by Defendants Hembrook, Schuck, Sullivan, and McCulloch (collectively, "Defendants"). Defendants seek dismissal of the claim against Schuck, any claims for monetary damages against Defendants in their official capacities, and the claims against Sullivan and McCulloch. *Id.* The Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## RELEVANT FACTS[1]

### I.  Claim Against Schuck

Henderson claims that Schuck retaliated against him by confining him to his cell for twenty-three hours per day for three days because of Henderson's prior grievances, formal complaints, and two lawsuits. ECF No. 26 at 32.[2] Schuck admitted, while interviewing Henderson regarding two grievances, that the confinement was because of the grievances. Henderson alleges that he filed two grievances regarding Schuck's retaliation, but the Inmate Grievance Resolution Committee ("IGRC") never mailed Henderson its decision. *Id.* at 33. Henderson claims this prevented him from filing any appeal. *Id.*

### II.  Claims Against Sullivan and McCulloch

Henderson claims that Attica officials retaliated against him "through an illegal mail watch" and compelled him and his girlfriend, "DB," to sever all communication by requiring them to sign a "negative correspondence." ECF No. 26 at 36. Henderson alleges that he and DB have

---

[1] The Court takes the following allegations from the amended complaint, ECF No. 12, and accepts them as true to evaluate the pending motion.

[2] For clarity, all page citations to documents available through the Court's electronic filing system will be to the page number assigned by that system.

known each other for years, that she has been supporting him during his incarceration, that he was going to ask her to marry him, and that they "share a close familial relationship." *Id.* at 36.

Henderson claims that Sullivan and McCulloch promulgated a rule at CNYPC that is unconstitutionally overbroad and vague and violates Henderson's right to freedom of intimate association in violation of the First and Fourteenth Amendments. *Id.* at 36–37. He claims that DB is an employee of CNYPC, is subject to the CNYPC rule, and the CNYPC rule prevents her from corresponding with him. *Id.* Henderson alleges that the CNYPC rule has severed his relationship with DB forever, prevents them from communicating without being subject to discipline, including the termination of DB's employment, and will continue to cause irreparable harm if enforcement of the CNYPC rule is not enjoined. *Id.* at 37.

## LEGAL STANDARD

Rule 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must "draw all reasonable inferences in Plaintiff['s] favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Where the plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*,

551 U.S. 89, 94 (2007) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (internal quotation marks omitted)). That said, even a *pro se* complaint must be dismissed if it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## DISCUSSION

### I.   Claim Against Schuck

Schuck argues that the remaining claim against him should be dismissed because of Defendant's failure to exhaust administrative remedies. ECF No. 40-2 at 14–16. Schuck argues that, even if Henderson did not receive the IGRC's decision regarding his grievances, he still could have appealed the IGRC's failure to respond. *Id.*; *see Morrison v. Parmele*, 892 F. Supp. 2d 485, 487–88 (W.D.N.Y. 2012) (detailing grievance procedure for inmates in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS")).

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (holding that exhaustion is "mandatory"). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). To properly exhaust administrative remedies, an inmate must comply with the facility grievance "system's critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). To properly exhaust their administrative remedies, inmates in the custody of DOCCS, like

4

Henderson, must appeal even where they have filed a grievance but received no response. *Cico v. Wenderlich*, 714 F. App'x 96, 97–98 (2d Cir. 2018) (summary order); *see also Taylor v. Kennedy*, No. 14-CV-4708, 2016 WL 4702436, at *5 (E.D.N.Y. Sept. 7, 2016) ("Courts in this circuit routinely find a failure to exhaust where a prisoner fails to complete the [applicable] process after receiving no response.").

The PLRA's mandatory exhaustion requirement "contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross*, 136 S. Ct. at 1856. In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) when the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when the procedure is "so opaque that it becomes, practically speaking, incapable of use," and (3) when prison administrators thwart the use of the procedure "through machination, misrepresentation, or intimidation." *Id.* at 1859–60. Aside from these circumstances, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.* at 1856.

The Second Circuit addressed the "opaqueness" unavailability exception in *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016). There, the court held that a grievance program is functionally unavailable in the "extraordinary circumstance[]" where an inmate confined in the special housing unit hands a corrections officer a grievance but the corrections officer fails to file it. *Id.* at 120, 124. The court explained that "the regulations only contemplate appeals of grievances that were actually filed," rendering it "practically impossible for [the plaintiff] to ascertain whether and how he could pursue his grievance." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 123–24 (internal quotation marks omitted).

5

Therefore, "the regulatory scheme . . . [was] so opaque and so confusing that . . . no reasonable prisoner c[ould] make use of it." *Id.* (internal quotation marks omitted).

Here, Schuck raises his failure to exhaust argument via a motion to dismiss. "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Accordingly, a complaint may only be dismissed under Rule 12(b)(6) where the failure to exhaust appears on its face. *Id.* "As when non-exhaustion is not clear on the face of a complaint, dismissal is similarly inappropriate when one of the . . . exceptions may well be applicable." *McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *13 n.15 (S.D.N.Y. Mar. 31, 2016).

Henderson admits that he filed a grievance regarding his claim against Struck and did not appeal, but he argues that administrative remedies were unavailable. ECF No. 51 at 51–56. Specifically, Henderson argues that, because a decision was rendered on his grievance but was not sent to him, he did not have the opportunity to avail himself of the applicable procedures for appealing unanswered grievances; that he did not have the appropriate form to appeal the decision; and that his grievance was not categorized correctly when filed, which prevented him from using the grievance procedures applicable to harassment allegations. ECF No. 51 at 53–56.[3]

"Although a full record may show otherwise, it would be premature to dismiss the Complaint at this stage, when it is possible that administrative remedies were rendered unavailable to Plaintiff." *Wing v. Myers*, No. 18-CV-11056, 2019 WL 6732967, at *6 (S.D.N.Y. Dec. 11, 2019) (internal quotation marks and brackets omitted) (collecting cases). It is possible that Henderson will successfully demonstrate that his failure to file an appeal was excusable. *McRae v. Cordero*,

---

[3] Although courts may not typically consider matters outside the complaint in evaluating a motion to dismiss, "[c]ourts . . . may consider factual allegations raised in a *pro se* plaintiff's opposition papers, without converting the motion to one for summary judgment." *Taylor*, 2016 WL 4702436, at *5.

No. 15-CV-4334, 2018 WL 3611964, at *6–8 (S.D.N.Y. July 26, 2018) (denying summary judgment for failure to exhaust where inmate failed to appeal grievance, but circumstances surrounding that failure rendered the process prohibitively opaque); *Ceara v. Deacon*, No. 13-CV-6023, 2017 WL 363003, at *6–7 (S.D.N.Y. Jan. 23, 2017) (denying summary judgment for failure to exhaust where inmate failed to appeal grievance, but did not receive form necessary to appeal grievance), *vacated on other grounds*, 916 F.3d 208 (2d Cir. 2019).

Multiple courts in this circuit have denied motions to dismiss under similar circumstances. *See, e.g.*, *Franklin v. New York City*, No. 16-CV-5549, 2017 WL 776105, at *5 (S.D.N.Y. Feb. 10, 2017) (collecting cases denying motions to dismiss where plaintiffs failed to appeal and failed to "allege facts explaining the failure"); *see also Jones v. Sposato*, No. 16-CV-5121, 2017 WL 4023135, at *6 (E.D.N.Y. Aug. 22, 2017) (holding that the mere absence of allegations that remedies were not available did not enable the court to infer that remedies were, in fact, available (collecting cases)). There is tension between such decisions and other decisions from courts in this circuit granting motions to dismiss where plaintiff's fail to justify their lack of exhaustion. *Hydara v. Burger*, No. 14-CV-1415, 2018 WL 1578390, at *5 (S.D.N.Y. Mar. 29, 2018) (granting motion to dismiss where plaintiff alleged that he filed a grievance, did not receive a response, did not file an appeal, and did not allege "facts from which the Court could infer that the [process] was 'unavailable' to him" (collecting cases)). The Court need not, however, resolve that tension as Henderson has alleged a confluence of facts here, particularly the alleged misclassification of his grievance, that may present a cognizable claim that administrative remedies were unavailable to him. *See Taylor*, 2016 WL 4702436, at *6 (declining to dismiss where it was unclear if inmate "was ever made aware of how to appeal when prison officials proved nonresponsive").

7

Accordingly, Schuck's motion to dismiss Henderson's claim for failure to exhaust is DENIED without prejudice.

## II. Official Capacity Claims

Defendants seek dismissal of Henderson's official capacity claims to the extent he seeks monetary damages. ECF No. 40-2 at 16–17. Defendants argue further that Henderson cannot seek injunctive relief from either Schuck or Hembrook because any such claims would be moot due to his transfer to a new facility. *Id.* Plaintiff provides no argument in response.

Henderson may not maintain his official capacity claims to the extent he seeks only damages against the Defendants acting in their official capacities. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."). Further, Henderson admits that he was transferred out of Attica, the facility in which he alleges Henderson and Schuck are employed and where he alleges they violated his rights. ECF No. 26 at 14, 32, 33, 41. Given that transfer, Henderson has not demonstrated why any claims for prospective injunctive relief against Henderson and Schuck would not be moot and subject to dismissal. *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility."). Accordingly, the Court GRANTS Defendants' motion to dismiss as to claims for monetary damages against the

Defendants in their official capacities and all claims against Henderson and Schuck in their official capacities.

### III.     Claims Against Sullivan and McCulloch

*A.     CNYPC Rule as Applied to Henderson*

The Defendants first argue that the Court should not have reinstated Henderson's claims against Sullivan and McCulloch regarding the CNYPC rule because the Court initially screened the claims on two separate grounds: finding that the rule was reasonable as applied to Henderson and concluding that Henderson did not have standing to assert the rights of DB. ECF No. 40-2 at 5–6. Defendants argue that the Court reconsidered only the second ground, and accordingly, should not have reinstated Henderson's claims related to the CNYPC rule. *Id.* Defendants are mistaken.

The Court previously concluded that the CNYPC rule, as it applies to Henderson, is reasonable. ECF No. 28 at 22–23 (citing *Turner v. Safley*, 482 U.S. 78, 92 (1987) (prohibition of inmates corresponding with one another); *Burns v. Martuscello*, 890 F.3d 77, 87 (2d Cir. 2018) (applying *Turner* to other inmate correspondence)). The Court then held that Henderson did not have standing to assert the unconstitutionality of the CNYPC rule as it applies to DB. *Id.* The Court, however, reconsidered that decision and found that Henderson could assert the rights of third parties and challenge the CNYPC rule as facially overbroad. ECF No. 31 at 6–7. The reasonableness of the rule as applied to Henderson does not impact his ability to challenge the rule as overbroad.

"A party alleging overbreadth claims that although a statute did not violate his or her First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them." *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006). "Facial challenges to overly

9

broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984). Accordingly, irrespective of whether the CNYPC rule is reasonable as applied to Henderson, the Court must evaluate Henderson's overbreadth challenge.

   B. *Overbreadth Challenge to the CNYPC Rule*

Defendants argue that Henderson has failed to state a valid overbreadth claim regarding the CNYPC rule and that, even if he did, any such claim would need to be for injunctive relief only as monetary damages are unavailable for overbreadth claims. ECF No. 40-2 at 6–13. Henderson responds that he has stated a valid overbreadth claim but concedes that monetary damages are unavailable. ECF No. 51 at 23–50. Henderson also notes that DB is no longer employed by CNYPC, but he is still prevented from communicating with DB because of the "negative correspondence." *Id.* at 24. Per his amended complaint, several officials at Attica required Henderson and DB to sign the "negative correspondence," which severed all correspondence between the two. ECF No. 26 at 36–38.[4]

Henderson's response makes clear that, even if this Court ultimately concluded that the CNYPC policy was unconstitutionally overbroad, it would not be able to afford him relief. Henderson cannot recover damages for his overbreadth claim and even if the Court granted him prospective relief for his overbreadth claim, such relief would not impact the "negative correspondence." Accordingly, Henderson lacks standing for his overbreadth claim.

---

[4] The Court screened Henderson's claims against the Attica officials regarding the "negative correspondence" as "wholly conclusory." ECF No. 28 at 23.

A "party invoking federal jurisdiction bears the burden of establishing prudential and constitutional standing." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015). And "courts may raise the issue *sua sponte*." *Id.* Article III standing requires a litigant to demonstrate that (1) he has suffered actual or threatened injury as a result of the defendant's illegal conduct; (2) the injury is fairly traceable to the challenged action; and (3) the injury is redressable by a favorable decision. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982). And although the overbreadth doctrine functions as an exception to "the general prohibition on a litigant's raising another person's legal rights[,]" *Centerfolds, Inc. v. Town of Berlin*, 352 F. Supp. 2d 183, 189 (D. Conn. 2004) (internal quotation marks omitted), it does not excuse a litigant's failure to satisfy "the Article III requirement of 'injury-in-fact,'" *Corso v. Fischer*, 983 F. Supp. 2d 320, 328 (S.D.N.Y. 2013) (quoting *Farrell*, 449 F.3d at 499); *see also Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991) (noting that prudential limitations on the standing doctrine are relaxed to "allow[] those who have suffered some cognizable injury, but whose conduct is not protected under the First Amendment, to assert the constitutional rights of others," but "plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction"). An injury-in-fact must be "concrete and particularized and . . . actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Henderson must demonstrate such an injury-in-fact "separately for each form of relief sought." *Id.* at 185.

Henderson concedes that he cannot obtain monetary relief through his overbreadth claim. ECF No. 51 at 50; *see Craft v. Vill. Of Lake George N.Y.*, 39 F. Supp. 3d 229, 240 (N.D.N.Y. 2014) (finding that plaintiff could not claim damages, "even nominal in nature," for a facial challenge to a village code on First Amendment grounds because such a challenge "is necessarily

11

directed at the statute itself and *must* be injunctive and declaratory" (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011))); *see also Farrell*, 449 F.3d at 498 ("All overbreadth challenges are facial challenges, because an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the court."). Accordingly, a favorable decision would not provide redress for any prior injury caused by the CNYPC rule and Henderson's defective damages claim is not a bar to a finding that he lacks standing. *Liu v. N.Y. City Campaign Fin. Bd.*, No. 14-CV-1687, 2016 WL 5719773, at *5–6 (S.D.N.Y. Sept. 29, 2016) (holding that plaintiffs lacked Article III standing for injunctive and declaratory relief where they failed "to plausibly allege that they w[ould] suffer *any* cognizable future injuries from enforcement of" the rule at issue and plaintiffs only remaining claim was for nominal damages); *see also Craft*, 39 F. Supp. 3d at 240 (holding that a claim for nominal damages did not save a First Amendment claim from mootness following amendment of the village code at issue).

The question the Court must answer then is whether Henderson has standing to seek prospective relief regarding the CNYPC rule. "To obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (brackets in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "[A] plaintiff cannot rely solely on past injuries," but instead "must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Id.* Henderson has made no such showing here.

The Court previously granted Henderson's motion for reconsideration and allowed him to proceed on his overbreadth claim on the assumption that the CNYPC rule prevented him from communicating with DB. ECF No. 31 at 6 ("Henderson alleges a threat of specific future harm—

that he will be placed in [the special housing unit] if he communicates with DB in violation of the CNYPC rule."). Henderson's response to the motion to dismiss renders this assumption false[5] and shows that he has not plausibly alleged a threat of specific future harm. He now clarifies that DB is no longer employed by CNYPC but the "negative correspondence" is still preventing him from communicating with DB. ECF No. 51 at 24.[6]

Given that the "negative correspondence" blocks Henderson's communication with DB regardless of whether she is subject to the CNYPC rule, he is not suffering an injury-in-fact due to the CNYPC rule. *Lamar Advert. of Penn, LLC v. Town of Orchard Park, N.Y.*, No. 01-CV-556, 2008 WL 781865, at *14 (W.D.N.Y. Feb. 25, 2008) (holding that plaintiff suffered no injury in fact due to the challenged ordinance where unchallenged ordinances provided an independent basis for the restriction complained of). Henderson does not claim that an injunction against any of the

---

[5] Even though his admission that DB is no longer employed by CNYPC is not contained in his amended complaint, the Court may consider Henderson's admission in his response to the motion to dismiss in evaluating whether to dismiss his overbreadth claim for lack of standing. *See Miller v. Metro. Life Ins. Co.*, No. 17-CV-7284, 2018 WL 5993477, at *2 (S.D.N.Y. Nov. 15, 2018) (holding that a court may, without notice to plaintiff, review its own jurisdiction based on matters outside of the pleadings because "federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*" (internal quotation marks omitted)).

[6] Henderson's admission that DB is no longer employed by CNYPC creates other jurisdictional problems. In his amended complaint, Henderson alleges that DB "began a job with CNYPC" at some point. ECF No. 26 at 36. It is accordingly unclear if DB was actually employed by CNYPC at the time Henderson commenced this action. If she was not, Henderson does not have standing to pursue prospective relief, but even if she was, the revelation that DB is no longer employed by CNYPC renders any claim regarding the CNYPC rule moot. *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir. 1991) ("While standing focuses on the status of the parties when an action is commenced, the mootness doctrine requires that the plaintiffs' claims remain alive throughout the course of the proceedings."); *see also Stepniak v. United Materials, LLC*, 305 F. App'x 789, 790 (2d Cir. 2009) (summary order) ("[I]nitial standing to bring suit is a separate inquiry from post-commencement mootness."). Henderson's claims regarding the CNYPC rule becoming moot warrants *sua sponte* dismissal. *See Coll. Standard Mag. v. Student Ass'n of State Univ. of N.Y. at Albany*, 610 F.3d 33, 34–35 (2d Cir. 2010) (dismissing appeal as moot where plaintiffs abandoned their damages claim and policy in question was repealed, noting that the court has "an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*" (internal quotation marks omitted)).

Defendants blocking enforcement of the CNYPC rule would block enforcement of the "negative correspondence"[7] or that he has even named defendants who have authority to lift the "negative correspondence" now that he is no longer incarcerated at Attica.[8] ECF No. 26 at 36–38; *see Thompson*, 284 F.3d at 415 ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility.").

In short, Henderson has not demonstrated how injunctive or declaratory relief regarding the CNYPC rule would prevent any prospective injury to him, and the Court must dismiss his claims regarding enforcement of that rule without prejudice. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed without prejudice.").

## CONCLUSION

The Defendants' motion to dismiss, ECF No. 40, is GRANTED in part and DENIED in part. Schuck's motion to dismiss the claim against him for failure to exhaust is DENIED without prejudice, and Henderson's claim against Schuck in his individual capacity may proceed. Henderson's claims against Hembrook and Schuck in their official capacities are DISMISSED. Henderson's claims against Sullivan and McCulloch are DISMISSED without prejudice. The

---

[7] The amended complaint does not actually allege that Henderson was compelled to sign the "negative correspondence" because of the CNYPC rule or that DB remains subject to the rule, ECF No. 26 at 36–37. Instead, Henderson alleges that he was compelled to sign in retaliation for his conduct and that, in order to restore communication with DB, the Court would need to enjoin enforcement of *both* the CNYPC rule and the "negative correspondence." *Id.* Even generously construing the amended complaint as alleging that Henderson was compelled to sign the "negative correspondence" because of the CNYPC rule, however, Henderson does not allege that enjoining enforcement of the CNYPC rule would result in the "negative correspondence" being lifted and the restoration of his communication with DB.

[8] Henderson brought claims against only Attica officials regarding the "negative correspondence." ECF No. 26 at 6–7, 36.

Clerk of Court is directed to terminate Sullivan and McCulloch as defendants. Hembrook and Schuck are directed to answer Henderson's amended complaint, ECF No. 26, within thirty days of the entry of this Decision and Order.

    IT IS SO ORDERED.

Dated: February 2, 2021
       Rochester, New York

                                              HON. FRANK P. GERACI, JR.
                                                    Chief Judge
                                            United States District Court