UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL JOSHUA HENDERSON,

     Plaintiff,

  v.

BRIAN HEMBROOK, et al.,

     Defendants.
_____

Case # 18-CV-6091-FPG

DECISION AND ORDER

## INTRODUCTION

*Pro se* Plaintiff Michael Joshua Henderson ("Plaintiff" or "Henderson") filed this 42 U.S.C. § 1983 action against various New York State Department of Corrections and Community Supervision ("DOCCS") officials alleging an assortment of misconduct while he was an inmate at Attica Correctional Facility ("Attica"). *See* ECF No. 1. After a screening of Henderson's amended complaint pursuant to 28 U.S.C. § 1915(e) (ECF No. 28) and a partial grant of dismissal (ECF No. 53), Henderson's remaining claims include: 1) a retaliation claim against Defendant Brian Hembrook ("Hembrook") for allegedly removing Henderson from his law library job for filing grievances (the "First Claim"); 2) a retaliation claim against Hembrook for filing a false misbehavior report, resulting in twelve days of keeplock confinement, in retaliation for filing grievances (the "Second Claim"); and 3) a retaliation claim against Defendant John Schuck ("Schuck") for imposing a three-day keeplock confinement for filing grievances (the "Third Claim"). *See* ECF No. 1; ECF No. 53.

Hembrook and Schuck (together, "Defendants") moved for summary judgment against all three remaining claims. ECF No. 99. In addition to opposing the motion, Henderson moved for permission to file a sur-reply (ECF No. 109), to "strike" Defendants' summary judgment motion (ECF No. 110), and for summary judgment on his own behalf (ECF No. 111). Defendants also moved to preclude material Henderson submitted in further support of his summary judgment motion. ECF No.

117.  For the reasons set forth below, this Court grants Henderson's motion to file a sur-reply, denies Henderson's motion to strike, grants Defendants' motion for summary judgment in part and denies it in part, denies Henderson's motion for summary judgment, and denies Defendants' motion to preclude evidence.

**BACKGROUND[1]**

Henderson was an inmate at Auburn Correctional Facility ("Auburn") before being transferred to Attica in 2013.  ECF No. 99-1 ¶ 2.  While at Auburn, Henderson filed multiple grievances and lawsuits against Auburn officials.  *Id*. ¶¶ 3, 4.  Henderson also filed grievances against prison officials at Attica.  *Id*. ¶¶ 12.  After arriving at Attica, Henderson began working in the prison's law library around October 2013.  *Id*. ¶ 5.  In May or June 2016, Hembrook began supervising inmates in the law library.  *Id*. ¶ 6.  Hembrook terminated Henderson from this position in June 2016.  *Id*. ¶ 5.

The parties dispute what exactly led to Henderson's termination from the law library position. Defendants allege that Hembrook discovered that Henderson was deleting material used for a legal research course from the library's computers.  *Id*. ¶ 10.  Henderson alleges that Hembrook became aware of his past grievances and lawsuits, and sought to terminate him in retaliation for those actions. ECF No. 107 ¶ 8.  Whatever the reason, Hembrook removed Henderson from his position and filed a misbehavior report with Attica, resulting in Henderson being confined to "keeplock"[2] for twelve days while awaiting his disciplinary hearing.  ECF No. 99-1 ¶¶ 8-11.  At the disciplinary hearing, Henderson

---

[1] This Court takes the following facts from Defendants' statement of material facts (ECF No. 99-1), Henderson's response to Defendants' statement of material facts (ECF No. 107), Henderson's affidavit in opposition to Defendants' motion for summary judgment (ECF No. 107-1), and each document's supporting material.  Considering Henderson's *pro se* status, this Court may consider the material facts he has set forth in his affidavit, despite not technically complying with Local Rule 56.  *See Wali v. One Source Co*., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions.").

[2] "Keeplock" is a type of confinement wherein prisoners are only given one hour of recreation time per day and meals are delivered directly to the prisoner's cell.  *Id*. ¶ 65.

was found not guilty because the computer at issue was not password protected and there was no evidence indicating that Henderson personally deleted anything. *Id.* ¶ 15.

Henderson then filed two grievances against Hembrook, one for Henderson's removal from the law library and one for Hembrook's misbehavior report. ECF No. 107 ¶¶ 42, 44. Henderson's grievance regarding his removal from the law library was ultimately appealed to the Central Office Review Committee ("CORC") and rejected. *Id*. ¶¶ 42, 43. Henderson's grievance regarding Hembrook's misbehavior report was dismissed by the Inmate Grievance Resolution Committee ("IGRC") as non-grievable because it challenged a disciplinary hearing. *Id*. ¶¶ 44, 45. Such a dismissal is not appealable, and must be reopened by the IGRC instead. *Id*. ¶ 29. Henderson then applied to the IGRC to reopen the grievance and was denied. *Id*. ¶ 46. Defendants admit that both the dismissal of the grievance as non-grievable and the refusal to reopen the grievance were incorrect decisions by prison officials. *Id*. ¶¶ 45, 46.

Separate from Henderson's issues with Hembrook, in November 2017, Henderson filed two grievances against Schuck. *Id*. ¶ 60. Henderson claims that, in retaliation for these grievances, Schuck placed Henderson in keeplock for three days. *Id*. ¶ 59. Henderson filed another grievance based on this alleged retaliation. *Id*. ¶ 66. However, Henderson never received a decision on this grievance, and therefore never appealed it. *Id*. ¶¶ 67, 68.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*,

426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). This does not mean, however, that a *pro se* litigant is excused from following the procedural requirements of summary judgment. "[A] *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## DISCUSSION

### I.      Henderson's Sur-Reply and Motion to Strike

Henderson has filed a motion for permission to file a sur-reply in further support of his opposition to summary judgment. ECF No. 109. He does not specify why a sur-reply is necessary but has included the proposed document. ECF No. 109-1. The local rules state that "[a]bsent permission of the Judge hearing the motion, sur-reply papers are not permitted." Loc. R. Civ. P. 7(a)(6). "[W]hether to permit the filing of a sur-reply is entirely within the Court's discretion." *Marseet v. Rochester Inst. of Tech.*, 20-CV-7096FPG, 2022 WL 2718509, at *1 (W.D.N.Y. July 13, 2022). However, courts are generally less rigid in applying sur-reply restrictions to *pro se* litigants. *See Lurch v. Lorenzana*, 16 Civ. 9343 (PGG), 2018 U.S. Dist. LEXIS 200522, at *5 n.3 (S.D.N.Y. Aug. 30, 2018) ("[T]he Court will nonetheless consider [p]laintiffs [s]ur-reply submission . . . in accordance with the special solicitude afforded *pro se* plaintiffs . . . .").

Considering Henderson's *pro se* status, this Court grant's Henderson's motion and will consider his sur-reply in assessing Defendants' summary judgment motion.

Henderson has also filed a "motion to strike," arguing that Defendants have failed to attach the pleadings to their summary judgment motion and that exhibit A of Defendants' reply is irrelevant to their motion. *See* ECF No. 110 ¶¶ 3, 4. To the extent Henderson's first argument is its own motion, as opposed to additional grounds in opposition to summary judgment, it is denied as legally baseless. *See Tudor Ins. Co. v. Golovunin*, No. 07-CV-4792 (KAM), 2013 WL 5437025, at *5 (E.D.N.Y. Sept. 27, 2013) ("[T]here is no requirement under the Federal Rules of Civil Procedure . . . for a party to attach copies of pleadings to a summary judgment motion."). As for Henderson's second argument, it is denied as moot because exhibit A of Defendants' reply has no bearing on this Court's partial grant of summary judgment discussed below. *See generally* ECF No. 108 (records regarding misbehavior report that Hembrook issued with no relevance to the exhaustion of remedies against Schuck). Accordingly, Henderson's motion to strike is denied.

## II.     Defendants' Summary Judgment Motion

Defendants assert several grounds for summary judgment against Henderson's three remaining claims. First, Defendants argue that Henderson failed to exhaust his administrative remedies. *See* ECF No. 97-3 at 9-16. Second, Defendants argue that Henderson has failed to establish several elements required for § 1983 retaliation claims. *See id*. at 16-23. And third, Defendants argue that compensatory damages cannot be awarded in cases with no alleged physical injury. *See id*. at 23.

Reasonable disputes of fact bar summary judgment with respect to Henderson's First and Second Claims against Hembrook. However, Defendants are entitled to summary judgment on Henderson's Third Claim against Schuck. Henderson's damages are also limited, although not to the extent argued by Defendants.

### a.   Exhaustion of Remedies

Defendants argue that Henderson did not follow the administrative grievance process set out in the Prison Litigation Reform Act ("PLRA") for his three claims. *See* ECF No. 97-3 at 9-16. Liberally construed, Henderson argues that he did exhaust the PLRA grievance procedures, that

5

Defendants cite the wrong grievance procedures that he needed to exhaust, and that he is excused from any failure to exhaust because the appeal process was unavailable to him.  *See* ECF No. 107-1 ¶¶ 11, 16.  Henderson exhausted his remedies for his First Claim and is excused from his failure to exhaust his Second Claim.  His Third Claim, however, was neither exhausted nor excused.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The exhaustion requirement is met by "complet[ing] the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself."  *Fuller v. Annucci*, Case # 17-CV-6255-FPG, 2019 WL 2140613, at *2 (W.D.N.Y. May 16, 2019) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)).

Inmates in DOCCS's custody must satisfy a three-tiered procedure to fully exhaust a grievance.  "First, the inmate must file a grievance with the [IGRC].  Next, the prisoner appeals the IGRC's adverse decision to the facility superintendent.  Finally, the prisoner appeals the superintendent's adverse decision to the [CORC].  *Id*. (citing 7 N.Y.C.R.R. § 701.5).  When a decision is not rendered within the applicable time limits, a grievance "may be appealed to the next step."  7 N.Y.C.R.R. § 701.6(g)(2).

This three-step procedure does not apply, however, to a prisoner's issues with the execution of any of the three steps themselves.  "[T]he 'result' of [a] disciplinary hearing is not grievable because the disciplinary proceeding has its own appeal mechanism."  *Allah v. Latona*, 540 F. Supp. 3d 325, 331 (W.D.N.Y. 2021).  This appeal mechanism is "a separate administrative appeal process for disciplinary hearings" set out under 7 N.Y.C.R.R. § 254.8.  *Caimite v. Rodriguez*, No. 9:17-CV-0919 (GLS/CFH), 2020 WL 6530780, at *11 (N.D.N.Y. Apr. 9, 2020), *report and recommendation adopted*, No. 9:17-

CV-0919 (GLS/CFH), 2020 WL 5651672 (N.D.N.Y. Sept. 23, 2020); *Adams v. O'Hara*, 9:16-CV-0527 (GTS/ATB), 2019 WL 652409, at *3 (N.D.N.Y. Feb. 15, 2019) ("It is also important to note that DOCCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings . . . .") (emphasis in original).  "[C]ompliance with the PLRA includes the formal inmate grievance process outlined [under § 701.5], as well as through [the] administrative appeal . . . ." *Zielinski v. Annucci*, 9:17-CV-1042 (DNH/TWD), 2019 WL 2870337, at *14 (N.D.N.Y. Mar. 19, 2019), *report and recommendation adopted*, 9:17-CV-1042 (DNH/TWD), 2019 WL 2869608 (N.D.N.Y. July 3, 2019).

Here, Henderson has properly exhausted the First Claim.  Defendants admit that Henderson ultimately appealed the grievance based on his removal from the law library to CORC.  ECF No. 99-1 ¶ 43; ECF No. 107 ¶ 43.  Defendants also limit their failure to exhaust argument for Hembrook to the grievance regarding Henderson's misbehavior report and twelve-day keeplock stint, the bases for the Second Claim, and omit discussion of Henderson's removal from the law library, the basis for the First Claim.  Accordingly, the final step of 7 N.Y.C.R.R. § 705.1 was complete, and Henderson exhausted his remedies for his First Claim.  *See Fuller*, 2019 WL 2140613, at *2.

Henderson did not, however, exhaust his Second Claim.  Henderson admits that he never ultimately appealed the grievance regarding Hembrook's misbehavior report because he was told that his objection to the superintendent's hearing was not grievable.  *See* ECF No. 107 ¶ 48.  While he claims that "all misbehavior reports have their own appeal mechanism" under 7 N.Y.C.R.R. § 254.8, as discussed above, this appeal route is for challenges to the hearings procedures themselves, not one's underlying grievance.  *See Zielinski*, 2019 WL 2870337, at *14 (dismissing retaliation claim where plaintiff admitted that he did not fully appeal the claim because it was a non-grievable challenge to his superintendent hearing).  Accordingly, Henderson was still required to appeal his grievance to the CORC as prescribed under 7 N.Y.C.R.R. § 705.1, requirements that were "*separate and distinct*" from any obligation under 7 N.Y.C.R.R. § 254.8.  *Adams*, 2019 WL 652409, at *3 (emphasis in original);

*see also Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (discussing distinction between the two appeals routes).

Henderson also admits that he never appealed the grievance underlying his Third Claim because he never received an initial decision from the IGRC on his grievance. *See* ECF No. 107 ¶ 68 (subparagraph A). A grievance may be appealed to the next step even if a decision has not been rendered. 7 N.Y.C.R.R. § 701.6(g)(2). Accordingly, Henderson failed to exhaust this claim as well because he still needed to appeal the IGRC decision, or lack thereof, to the superintendent and the CORC.

However, a failure to exhaust does not automatically bar Henderson's claims. A plaintiff's failure to exhaust administrative remedies is excused if the necessary procedures are unavailable. *Ross v. Blake*, 578 U.S. 632, 643 (2016). Procedures are "unavailable" if (1) they "operate[] as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) they are "so opaque that [they] become[], practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. At least one court in the Second Circuit has found that procedures are unavailable when a prisoner is told that their complaint is not grievable. *See Barrett v. Maciol*, Civ. No. 9:20-CV-0537 (MAD/DJS), 2021 WL 7161931, at *7 (N.D.N.Y. Mar. 11, 2021) ("One direct exception to the exhaustion requirement exists in situations where the exhaustion procedure specifically provides that the dispute in question is non-grievable, *or where the inmate establishes, in a non-conclusory fashion, that he was so advised by the prison officials*.") (emphasis added), *report and recommendation adopted*, Civ. No. 9:20-CV-0537 (MAD/DJS), 2022 WL 130878 (N.D.N.Y. Jan. 14, 2022); *cf. Beckhorn v. New York State Dep't of Corr. & Cmty. Supervision*, 18-CV-1452, 2019 WL 234774, at *9 (W.D.N.Y. Jan. 16, 2019) (failing to grieve a non-grievable claim does not constitute a failure to exhaust).

Defendants admit that the IGRC improperly dismissed the grievance underlying Plaintiff's First and Second Claims and improperly told Plaintiff that he could not reopen the complaint because it was non-grievable. *See* ECF No. 99-1 ¶¶ 44-46. Defendants argue that "Plaintiff chose not to appeal the dismissal to the CORC," ECF No. 108-1 at 6, but it is unclear how he "chose" to not exhaust his remedies. His grievance was improperly dismissed and the IGRC refused to reopen it. Accordingly, because it appears Henderson did everything in his power to properly appeal this grievance, his failure to exhaust is excused as to his First and Second Claims.

Defendants rely on *Animashaun v. Afify* for the assertion that a mistaken basis for dismissing a grievance is insufficient to excuse a failure to exhaust. *See* ECF No. 108-1 at 5 (citing *Animashaun v. Afify*, 470 F. Supp. 3d 294, 296 (W.D.N.Y. 2020)). *Animashaun*, however, was not decided on a mistaken basis for dismissing a grievance. There, the plaintiff was improperly told that, procedurally, he did not need to wait for the CORC to decide his appeal before filing a federal lawsuit. *Id*. Therefore, the appellate procedure was still available to the plaintiff, but he improperly relied on incorrect advice about when his claim was exhausted. *Animashaum* did not involve a substantive rejection of the plaintiff's attempted grievance, as is the case with Henderson's First and Second Claims. Henderson is not improperly relying on bad advice; he was told that his grievance was substantively meritless and could not be reopened because it was non-grievable. Accordingly, this claim is more in line with rule articulated in *Barrett*, where improperly rejecting a grievance on its merits constituted an excuse for failing to exhaust. *See Barrett,* 2021 WL 7161931, at *7.

Henderson's Third Claim, however, enjoys no such excuse. This claim was not substantively rejected and deemed non-grievable. Instead, Henderson states that he never received an IGRC ruling on the first level of his grievance proceedings. *See* ECF No. 107 ¶ 68. Henderson was still able to appeal this grievance after the deadline for the IGRC to rule had passed. 7 N.Y.C.R.R. § 701.6(g)(2). Accordingly, this does not mean the appellate process was unavailable to Henderson. *See Taylor v. New York City Dep't of Corr.*, 849 F. App'x 5, 8 (2d Cir. 2021) ("prison officials' failure to respond

to . . . grievances d[oes] not render the IGRP administrative procedure unavailable"). Therefore, Henderson's failure to exhaust is unexcused, and summary judgment is warranted against his Third Claim.

### b. Retaliation Claim Requirements

To establish a § 1983 retaliation claim, a plaintiff must demonstrate "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) (quoting *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002)).

Defendants argue that Henderson has failed to establish several of these elements. First, Defendants argue that twelve days of keeplock confinement is not a severe enough to sustain Henderson's Second Claim. *See* ECF No. 97-3 at 16-19. Second, Defendants argue that there was no causal connection between Hembrook's actions and Henderson's grievances against different prison officials, barring Henderson's First and Second Claims. *See id*. at 19-22. And third, Defendants argue that there were legitimate reasons for punishing Henderson, therefore barring his First and Second Claims. *See id*. at 22.

#### i. Adverse Action

To establish a § 1983 retaliation claim, an alleged adverse action must be sufficiently severe to "deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (alterations omitted). False misbehavior reports resulting in multi-day durations of keeplock confinement can constitute sufficiently adverse actions to establish a retaliation claim. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) ("the filing of false misbehavior reports . . . and [a] sentence of three weeks in keeplock" is sufficiently adverse); *Lashley v. Wakefield*, 367 F. Supp. 2d 461, 466 (W.D.N.Y. 2005) (denying summary judgment where "[p]laintiff allege[d] that defendants repeatedly filed false disciplinary charges against him, resulting

10

in keeplock confinement and loss of privileges"); *Bartley v. Collins*, No. 95 Civ. 10161 (RJH), 2006 WL 1289256, at *7 (S.D.N.Y. May 10, 2006) ("Collins's second misbehavior report against plaintiff did constitute adverse action because it caused plaintiff to be placed in keeplock confinement for ten days."); *Auleta v.LaFrance*, 233 F. Supp. 2d 396, 402 (N.D.N.Y. 2002) (on a motion to dismiss, "[p]laintiff's claim that he was placed in keeplock for 7 1/2 days is properly construed as alleging an adverse action"); *Gunn v. Malani*, No. 20-CV-2681 (KMK), 2023 WL 2664805, at *7 (S.D.N.Y. Mar. 28, 2023) (denying motion to dismiss, stating that "[c]onfining a prisoner to keeplock is sufficient to establish an adverse action" without discussing alleged duration of confinement).

Here, it is not disputed that Hembrook filed a misbehavior report against Henderson that caused Henderson to be placed in keeplock for twelve days. *See* ECF No. 99-1 ¶ 9. It is also not disputed that the misbehavior report was ultimately dismissed and Henderson was found not guilty of the allegations it set forth. *See id.* ¶ 15. Considering the duration of the keeplock period and the not guilty verdict, this allegedly adverse act is sufficiently severe to avoid summary judgment on Henderson's Second Claim.

### ii. Causation

A § 1983 retaliation claim requires a "causal connection between the protected speech and the adverse action." *Scott*, 344 F.3d at 287. Causation can be established by demonstrating that prison officials filed false disciplinary charges because of a previously filed grievance. *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983."); *Tripathy v. Brotz*, Case # 6:22-cv-06469-FPG, 2023 WL 4032831, at *7 (W.D.N.Y. June 15, 2023) ("A misbehavior report issued in retaliation for an inmate's exercise of a protected activity may constitute an adverse action.").

While any inference of causation is weakened in cases where an inmate's past grievance is against a different prison official than the one that later files a false disciplinary charge, direct evidence

of a retaliatory motive can overcome this weakened connection. *See Burgess v. Banasike*, 636 F. Supp. 3d 351, 360 (W.D.N.Y. 2022) (denying motion to dismiss because prison official "directly stated he was acting in retaliation" for grievances made against other officials); *Gunn*, 2023 WL 2664805, at *7 ("Defendant's statements that [p]laintiff's grievances were the reason for his disciplinary actions, along with [p]laintiff's allegation that he had recently filed a grievance against other officers, are sufficient to support an inference of causation."); *Mack v. Wood*, 9:17-CV-1146 (BKS/ATB), 2019 WL 5197230, at *6 (N.D.N.Y. July 26, 2019) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against other correctional officers. Nevertheless, this general rule may not apply where there are indications of 'a retaliatory purpose—i.e., that the [officer's conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances.'") (quoting *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338-39 (S.D.N.Y. 2015)), *report and recommendation adopted*, 9:17-CV-1146 (BKS/ATB), 2019 WL 4183894 (N.D.N.Y. Sept. 4, 2019).

Here, there is a genuine dispute as to whether Henderson has demonstrated a causal connection between his alleged grievances and later punishment. Henderson admits that the grievances giving rise to his First and Second Claims were against prison officials other than Hembrook. *See* ECF No. 107 ¶¶ 12, 13. However, Henderson has also produced an affidavit from another Attica inmate, Conrad Marshall, claiming that Hembrook admitted to Marshall that he terminated Henderson in retaliation for filing grievances against other officers. *See* ECF No. 1-2 at 17. This affidavit was sworn on June 25, 2016, very close in time to Henderson's termination and the alleged statement to Marshall. *Id*. This direct evidence is sufficient to overcome Henderson's failure to file a grievance against Hembrook personally. Likewise, a reasonable juror could find that this direct evidence of Hembrook's retaliatory motive to terminate Henderson from the law library position creates an inference of retaliatory intent for the filing of the false misbehavior report. Accordingly, both Henderson's First and Second Claims have demonstrated a dispute of fact as to causation.

### iii.   Legitimate Grounds for Disciplinary Action

To allege a § 1983 retaliation claim, in addition to establishing some kind of protected conduct, a plaintiff must show that the protected conduct "was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." *Gayle,* 313 F.3d at 682 (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). After the plaintiff has established this, "[t]he defendant official then bears the burden of establishing that the disciplinary action would have occurred 'even absent the retaliatory motivation,' which he may satisfy by showing that the inmate 'committed the . . . prohibited conduct charged in the misbehavior report.'" *Holland v. Goord*, 758 F.3d 215, 226 (2d Cir. 2014) (quoting *Gayle*, 313 F.3d at 682).

Defendants argue that they have met their burden because "Hembrook believed that Plaintiff had purposefully deleted training material from the law library computer." ECF No. 97-3 at 22. However, this purported belief is directly disputed by both the aforementioned Marshall affidavit and the ultimate failure to find Henderson guilty of deleting anything from the computer. *See* ECF No. 1-2 at 17; ECF No. 99-1 ¶ 15. Accordingly, Defendants have not established that, absent Hembrook's allegedly retaliatory intent, Henderson would still have been removed from the law library and issued a misbehavior report.[3]

### c. Compensatory Damages

Defendants argue that if any claims survive summary judgment, they are barred from recovering compensatory damages because Henderson has not established any physical damages. *See* ECF No. 97-3 at 23. "[U]nder 42 U.S.C. § 1997e(e), a prisoner may not recover for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Toliver v. City*

---

[3] Defendants further argue in their opposition to Henderson's summary judgment motion that Henderson has failed to set forth any evidence that he participated in protected conduct. *See* ECF No. 113-4 at 6. This argument was omitted from Defendants' summary judgment motion papers. *See* ECF No. 97-3 at 16-22 (only arguing for summary judgment based on adverse action, causation, and legitimate reason for punishment grounds). To the extent Defendants intended this argument as one for summary judgment, and not merely in opposition to Henderson's motion, Henderson has affirmed that he submitted grievances after arriving at Attica but before being terminated from the law library position. *See, e.g.*, ECF No. 107-1 ¶¶ 3, 8. Accordingly, this testimony alone provides sufficient evidence of protected conduct to avoid summary judgment. *See Bradshaw v. City of N.Y.*, 855 F. App'x 6, 9 (2d Cir. 2021) (self-serving deposition testimony alone may be sufficient to withstand summary judgment).

*of N.Y.*, 530 F. App'x 90, 93 n.2 (2d Cir. 2013) (internal quotations omitted).  However, prisoners may still recover other compensatory damages, such as damages for injuries to their constitutional rights. *See id.* ("[E]ven if [a prisoner] is unable to establish that any of the injuries complained of . . . stemmed from an incident in which he suffered physical injuries, [a prisoner] may still recover damages for injuries to his First Amendment rights, as well as nominal and punitive damages for any other constitutional violations.") (citing *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002)); *Agostini v. Backus*, No. 14–CV–6188 CJS, 2015 WL 1579288, at *8 (W.D.N.Y. Apr. 9, 2015) ("[T]he Second Circuit has indicated that § 1997e(e) does not bar a plaintiff from recovering compensatory damages for 'actual injury' resulting from a constitutional violation, even where there is no physical injury."); *Rahman v. Schriro*, 22 F. Supp. 3d 305, 317 (S.D.N.Y. 2014) (assessing "whether the PLRA bars [p]laintiff from asserting a claim for compensatory damages," finding that "The PLRA's limitation on recovery of damages does not apply where the claim asserted is not one for mental or emotional injury").

Accordingly, Henderson may still recover compensatory damages for the alleged violation of his constitutional rights.  He may not, however, recover damages based solely on his mental and emotional injury.

### III.   Henderson's Summary Judgment Motion

Henderson cross-moves for summary judgment, arguing that all elements of his three § 1983 retaliation claims have been established.  *See generally* ECF No. 111.  However, as discussed above, Henderson's Third Claim fails because there is a no reasonable dispute that he failed to exhaust his administrative remedies.  For his remaining claims, there is a material dispute of fact as to whether Henderson's grievances caused the alleged adverse actions by Hembrook, a necessary element of a §

1983 retaliation claim.  *See Scott*, 344 F.3d at 287.  Accordingly, Henderson's summary judgment motion is denied.

### IV.   Henderson's Failure to Produce Grievances

In his reply in further support of his summary judgment motion, Henderson submits several grievances he allegedly filed at Attica as evidence that he participated in protected conduct.  *See* ECF No. 114.  Defendants argue in their sur-reply that these grievances had never been produced and raise new claims not included in Henderson's amended complaint.  *See* ECF No. 117 ¶ 3.  To the extent Defendants argue that this warrants denial of Henderson's summary judgment motion, as discussed above, Henderson's motion is denied on other grounds.  However, to the extent the sur-reply is construed as a motion to preclude the use of Henderson's grievances under Rule 37, this motion is denied.

Rule 37(c) provides in part that "[i]f a party fails to provide information . . . as required by Rule 26(a), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Several provisions of the Federal Rules of Civil Procedure authorize a court to impose sanctions for untimely, incomplete, or misleading responses during discovery."  *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S de R L de C.V.*, 627 F. Supp. 3d 408, 416 (S.D.N.Y. 2022).  "Where . . . the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).  Courts have cautioned, however, that preclusion of evidence is a "harsh remed[y]" that "should be imposed only in rare situations."  *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).  Ultimately, "[w]hether to grant or deny

a motion to strike is vested in the trial court's sound discretion." *Pharmacy, Inc. v. Amer. Pharm. Partners, Inc*., No. 05-CV-776, 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007).

Courts consider several factors in determining whether evidence should be excluded under Rule 37: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the [undisclosed information]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [information]; and (4) the possibility of a continuance." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

Here, there is no clear explanation for Henderson's failure to produce his grievances during discovery, but considering his *pro se* status, this procedural error is not egregious. Further, the information is highly important to Henderson's case because it is direct evidence of his alleged protected conduct. Likewise, Defendants are not prejudiced because, contrary to their assertion, the evidence does not raise any new claims. It merely supports the protected conduct element of Henderson's existing claims. Defendants also failed to even raise this argument in support of their summary judgment motion, *see generally* ECF No. 97-3 at 16-22, undercutting their claims of prejudice. And lastly, the untimely disclosure has not resulted in any delay of this case's progress.

Accordingly, in light of the principle that preclusion is a "harsh remedy" that should be exercised sparingly, as well as courts' "preference to have issues and claims decided on their merits, rather than on the basis of a procedural shortcoming," *Vista Food Exch., Inc*., 627 F. Supp. 3d at 417, any request for preclusion of the grievances is denied.

## CONCLUSION

For the foregoing reasons, Henderson's motion for permission to file a sur-reply (ECF No. 109) is GRANTED; Henderson's motion to strike (ECF No. 110) is DENIED; and Henderson's motion for summary judgment (ECF No. 111) is DENIED. Further, Defendants' motion for summary judgment (ECF No. 99) is GRANTED in part and DENIED in part. Henderson's § 1983 retaliation claim against Schuck is to be dismissed. Henderson's remaining claims against Hembrook are limited

to damages not based solely on Henderson's alleged mental and emotional injury.  Lastly, Defendants'

motion to preclude evidence (ECF No. 117) is DENIED.


       IT IS SO ORDERED.

Dated:  September 25, 2023
        Rochester, New York


                                                  _____
                                                  FRANK P. GERACI, JR.
                                                  UNITED STATES DISTRICT JUDGE
                                                  WESTERN DISTRICT OF NEW YORK